UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

—————

CHARLES EDWARD FIELDS,

                Plaintiff,                   Case No. 2:13-cv-306

v.                                       Honorable R. Allan Edgar

DENISE GERTH et al.,

                Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on immunity grounds and/or for failure to state a claim.

**Factual Allegations**

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility.  In his *pro se* complaint, Plaintiff sues Assistant Resident Unit Supervisor (ARUS) Denise Gerth and Hearing Officer Linda Maki for violating his First and Fourteenth Amendment rights.

On October 25, 2012, Plaintiff was ordered to pack his things up in a duffle bag and return to the general population.  Plaintiff refused.  The prison guard then issued a misconduct ticket to Plaintiff.  According to his October 25, 2012 Misconduct Report, Plaintiff was charged with Destruction or Misuse of Property, a Class II Misconduct.  (Attach. to  Compl., docket #8-1, Page ID#28.)  Plaintiff complains that ARUS Gerth later re-classified his misconduct ticket to a Class I Misconduct for Disobeying a Direct Order.[1]  (Compl., docket #1, Page ID#3.)  Before his misconduct hearing on November 9, 2012, Plaintiff encountered ARUS Gerth speaking with Hearing Officer Maki.  Gerth asked Plaintiff if Plaintiff was ready to be found guilty on his misconduct violation.  Before Plaintiff could respond, Maki said "[t]hat is ensured."  (*Id.*)  Plaintiff was ultimately found guilty of the misconduct charge.  (*Id.* at Page ID##3-4.)

As to his misconduct ticket, Plaintiff claims that he did not receive a timely hearing under Michigan Department of Corrections (MDOC) Policy Directive 03.03.105(AA)(1), which requires hearings to be held within seven days.[2]  Plaintiff also argues that he did not receive twenty-four hours' notice that his misconduct charge was changed from Destruction or Misuse of Property

---

[1]Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.  (*See* Policy Directive 03.03.105, ¶ B) (effective Apr. 9, 2012).

[2]According to Michigan Department of Corrections Policy Directive 03.03.105, ¶AA(1) (effective Apr. 9, 2012), a hearing shall be conducted within seven business days after the Misconduct Report is reviewed with the prisoner.  Plaintiff's misconduct was reviewed on October 25, 2012, and the hearing was held on November 9, 2012, a difference of fifteen days.  (Attach. to Compl., docket #8-1, Page ID#28.)

to Disobeying a Direct Order.[3]  (*Id.* at Page ID#4.)  Plaintiff further states that he did not have the opportunity to provide a defense.  Because of the misconduct conviction, Plaintiff lost thirty days of disciplinary credits and was classified to administrative segregation for three months.  Plaintiff argues that Defendants Gerth and Maki violated his due process rights.

Plaintiff also asserts retaliation and conspiracy claims.  Plaintiff argues that ARUS Gerth retaliated against him by changing the classification of his misconduct ticket because Plaintiff filed a grievance against Gerth's co-workers.  Plaintiff also states that Hearing Officer Maki retaliated against Plaintiff because Plaintiff asked Maki to disqualify herself from his misconduct hearing.  Finally, Plaintiff complains that Defendants Gerth and Maki conspired to find him guilty of the misconduct ticket.

For relief, Plaintiff requests $90,000 in compensatory damages, $30,000 in emotional damages, $8,000 in economic damages and $250,000 in punitive damages.

**Discussion**

I.    Immunity

Defendant Maki is a  hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255.  Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections.  *See* MICH. COMP. LAWS § 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the

---

[3]In his November 9, 2012 Misconduct Hearing Report, the hearing officer noted that the ARUS changed the charge on the Misconduct Report from Destruction or Misuse of Property to Disobeying a Direct Order.  The officer stated: "It is obvious that the title of the charge was wrong as the description had nothing to do with [the] destruction or misuse of property.  It had to do with disobeying an order to pack up.  The error was in the nature of the clerical error and correction by the ARUS, the reviewing officer, was appropriate."  (Attach. to Compl., docket #8-1, Page ID#29.)

- 3 -

sanction imposed.  *See* MICH. COMP. LAWS § 791.252(k).  There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts.  *See* MICH. COMP. LAWS § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id*.; *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).  Plaintiff's action against Hearing Officer Maki fails because Maki is absolutely immune under the circumstances of this case.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    **Due Process**

Plaintiff complains that he did not receive a timely misconduct hearing, notice of the classification change in his misconduct charge or the opportunity to present a defense in violation of his due process rights.  Plaintiff was ultimately convicted of his misconduct charge.  A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather

- 5 -

the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison

sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of

good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates

to the creation and forfeiture of disciplinary credits[4] for prisoners convicted for crimes occurring

after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss

of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it

merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440.

Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a

misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally

protected liberty interests, because it does not necessarily affect the length of confinement.  355 F.

App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov.

24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major

---

[4]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, No. 09-13030, 2011 WL 17591, at *1 (E.D. Mich. Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, Plaintiff may nevertheless be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).  Plaintiff has not identified any significant deprivation arising from his conviction, and, thus, his due process claim fails.

For all of these reasons, Plaintiff's due process claims regarding his misconduct conviction fail to state a claim.

### B.    **Retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

   Plaintiff alleges that Defendant Gerth retaliated against him by changing the classification of his misconduct charge because Plaintiff filed grievances against Gerth's co-workers. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).  While Plaintiff satisfies the first element, he fails to satisfy the second and third elements.  The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). At Plaintiff's misconduct hearing, Hearing Officer Maki stated that the initial classification of Plaintiff's misconduct as Destruction or Misuse of Property was merely a clerical error and Gerth correctly changed the misconduct charge to Disobeying a Direct Order.  Where a disputed issue of fact is resolved at a major misconduct hearing as a necessary part of the hearing's judgment, that factfinding has preclusive effect in collateral litigation brought by the prisoner under 42 U.S.C. §1983.  *See Peterson v. Johnson*, 714 F.3d 914-15 (6th Cir. 2013).  Under *Peterson*, Plaintiff may not contest the finding of Hearing Officer Maki.  Because the classification change was merely to correct a clerical error, it can hardly be construed as an adverse action.  Moreover, Plaintiff fails to establish a causal connection between the adverse action and protected conduct.  Again, Defendant Gerth was motivated to change the misconduct classification in order to correct a clerical error.  Gerth would

have changed the classification on the misconduct ticket regardless of Plaintiff's prior grievances. Therefore, Plaintiff fails to satisfy the second and third elements of his retaliation claim, and, thus, his retaliation claim fails.

Further, a finding of guilt for a misconduct ticket based on some evidence of a violation of prison rules essentially "checkmates" a retaliation claim. *Lewis v. Turner*, 16 F. App'x 302 (6th Cir. 2001); *see also Bey v. Frechen*, No. 2:15-cv-201, 2006 WL 2632564, at *2 (W.D. Mich. 2006); *Coleman v. Gerth*, No. 2:05-cv-158, 2006 WL 2714959, at *4 (W.D. Mich. 2006). The Sixth Circuit's application of this rule has been unwavering. *See Burton v. Rowley*, 2000 WL 1679463, at *2 (6th Cir. 2000) (A finding of guilt based on some evidence of a violation of prison rules "essentially checkmates [a] retaliation claim."). Because Hearing Officer Maki found Plaintiff guilty of disobeying a direct order, Plaintiff's retaliation claim was "checkmated." *See id.*

For all these reasons, Plaintiff's retaliation claim against Defendant Gerth fails to state a claim.

C. **Conspiracy**

Plaintiff alleges that Defendants Gerth and Maki conspired together to find Plaintiff guilty of his misconduct ticket. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).

- 9 -

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

In the instant case, Plaintiff merely alleges that Defendants Gerth and Maki spoke before his misconduct hearing and agreed to find Plaintiff guilty of the misconduct ticket. Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that certain prison officials have either disciplined him or made decisions with which he disagrees. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light

- 10 -

of the far more likely possibility that Defendants' conduct was unrelated, Plaintiff fails to state a plausible claim of conspiracy.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on immunity grounds and/or  for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:        12/6/2013                              */s/ R. Allan Edgar*
                                                     R. Allan Edgar
                                                     United States District Judge


- 11 -